IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOHN CHARLES SAWAGUCHI,      )      CIVIL 16-00255 LEK
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )
CAROLYN W. COLVIN,           )
Commissioner of Social       )
Security,                    )
                             )
          Defendant.         )
_____)


**ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING
<u>THE ADMINISTRATIVE LAW JUDGE'S OCTOBER 31, 2014 DECISION</u>**

          Before this Court is Plaintiff John Charles Sawaguchi's

("Plaintiff") Complaint for Review of Social Security Disability

Benefits Determinations ("Complaint"), filed on May 20, 2016, in

which he appeals from the Administrative Law Judge Tamara Turner-

Jones's ("ALJ") October 31, 2014 Decision ("Appeal").  The ALJ

issued the Decision after conducting a hearing on August 12,

2014.  [Administrative Record ("AR") at 11.[1]]  The ALJ ultimately

concluded that Plaintiff was not disabled, for purposes of the

Social Security Act ("SSA"), from March 24, 2010 through the date

of the Decision.  [Decision at 15.]

_____

          [1] The Decision is AR pages 11-25.  All subsequent citations
to the Decision refer to the page numbers of the Decision itself.

On September 23, 2016, Plaintiff filed his Opening

Brief.[2]  [Dkt. no. 22.]  Defendant Carolyn W. Colvin,

Commissioner of Social Security ("the Commissioner"), filed her

Answering Brief on November 29, 2016, and Plaintiff filed his

Reply Brief on December 15, 2016.  [Dkt. nos. 24, 25.]  This

Court heard oral argument in this matter on January 23, 2017.  On

March 29, 2017, this Court issued an entering order ruling on the

Appeal ("3/29/17 EO Ruling").  [Dkt. no. 31.]  The instant Order

supersedes the 3/29/17 EO Ruling.  After careful consideration of

the Appeal, the parties' briefs, the arguments of counsel, and

the relevant legal authority, Plaintiff's Appeal is DENIED and

the ALJ's Decision is AFFIRMED.

**BACKGROUND**

I.   **Factual Background**

On October 26, 2007, Plaintiff filed a Title II

application for disability insurance benefits, alleging a

disability beginning December 29, 2006.  The claim was denied,

and Plaintiff requested a hearing.  Administrative Law Judge

Dean K. Franks ("2009 ALJ") held a hearing on December 11, 2009

("2009 Hearing"), and issued a Decision on December 23, 2009

---

[2] On January 20, 2017, Plaintiff filed an amended version of
his Opening Brief to correct erroneous citations to the
Administrative Record.  [Dkt. no. 29.]

("2009 Decision"). [AR at 94.[3]] The 2009 ALJ noted that Plaintiff had past relevant work as a union business representative/benefits clerk, recycler, furniture driver, forklift driver, and kitchen/interior designer. [2009 Decision at 9.]

The 2009 ALJ concluded that Plaintiff was disabled, as defined by the SSA, from October 18, 2007 through March 31, 2009. However, the 2009 ALJ found that Plaintiff had the ability to return to work as of April 1, 2009 through the date of the 2009 Decision, as a result of an exercise program to increase his back and leg strength.[4] [Id. at 10.] Thus, the 2009 ALJ concluded that Plaintiff's disability ended on April 1, 2009. [Id. at 12.]

On January 20, 2012, Plaintiff filed another Title II application for disability insurance benefits, alleging a disability beginning March 24, 2010. The claim was denied, initially and on reconsideration. On October 9, 2013, Plaintiff filed a written request for a hearing. At the August 12, 2014 hearing ("2014 Hearing"), Plaintiff was represented by

_____

[3] The 2009 Decision is AR pages 94 to 105. All subsequent citations to the 2009 Decision refer to the page numbers of the 2009 Decision itself.

[4] Although the 2009 ALJ found that Plaintiff's medical improvement made it possible for him to return to work as of April 1, 2009, Plaintiff apparently did not do so. See 2009 Decision at 5 (finding that Plaintiff had not engaged in substantial gainful activity since October 18, 2007).

Frank Ury, Esq. David Dettmer, an impartial vocational expert
("VE"), participated in the 2014 Hearing by telephone. [Decision
at 1.]

The ALJ concluded that, for purposes of the current
application for benefits, res judicata applied to the previously
adjudicated period. As to the period after the adjudicated
period in the 2009 Decision, the ALJ declined to adopt the 2009
ALJ's analysis and concluded that the 2009 Decision was not
entitled to res judicata effect. The ALJ concluded that the
presumption of continuing disability had been rebutted by a
showing of changed circumstances relating to the issue of
disability. The new, material evidence included Plaintiff's
testimony at the 2014 Hearing and medical records after the date
of the 2009 Decision. [Id. at 1-2.]

In the instant Appeal, Plaintiff agrees with the ALJ's
findings in step one through four of the five-step sequential
analysis to determine whether a claimant is disabled. [Opening
Brief at 5.] Thus, the Court will only discuss the ALJ's
findings as to those steps to the extent they are relevant to the
issue in the Appeal.

At step one, the ALJ found that Plaintiff had not
engaged in substantial gainful activity since March 24, 2010.
[Decision at 4.] At step two, the ALJ found that Plaintiff had
the following impairments that were considered severe: "post-

concussion syndrome; obesity; chronic pain syndrome; plantar

fasciitis; degenerative joint disease; cervical, thoracic, and

lumbar strain/sprain; right knee arthritis; affective disorder;

status post carpal tunnel release; and anxiety disorder, not

otherwise specified." [Id. (citation omitted).] At step three,

the ALJ found that none of Plaintiff's impairments, either

individually or in combination, met or medically equaled the

severity of one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. [Id. at 4-5.] At step four, the ALJ

found that Plaintiff had

> the residual functional capacity [("RFC")] to
> perform less than a full range of sedentary work
> as defined in 20 CFR 404.1567(a). Specifically,
> the claimant can lift and/or carry up to 10
> pounds; can stand and/or walk for two hours out of
> an eight-hour workday with customary breaks; can
> sit for six hours out of an eight-hour workday
> with customary breaks; would need to alternate
> positions between sitting and standing at one hour
> intervals for one to five minutes at the
> workstation; can occasionally kneel, stoop, crawl,
> and crouch; can occasionally climb ramps and
> stairs; can never climb ladders, ropes or
> scaffolds; can frequently use the upper
> extremities for fine and gross manipulations as
> well as reaching in all directions; should avoid
> unprotected heights and dangerous moving
> machinery; [would] need to avoid concentrated
> exposure to bright, blinking lights or prolonged
> direct sunlight due to headaches or migraines; can
> sustain concentration and attention, persistence
> and pace in two hour blocks of time to complete a
> normal workday; due to a low tolerance for stress,
> the individual would need a work environment that
> does not involve fast paced production or assembly
> line work, such as that involving a conveyor belt;
> would be able to interact and respond
> appropriately to supervisors and co-workers, but

would need only occasional direct contact with the general public; she [sic] would be unable to do complex or detailed tasks, but would remain capable of understanding, remembering, and carrying out simple instructions.

[Id. at 6.]  The ALJ also found that Plaintiff was unable to perform any of his past relevant work.  [Id. at 13.]

At step five, the ALJ noted that, Plaintiff was within the category of "a younger individual age 18-44" on the alleged onset date, but, as of the date of the Decision, he was within the category of "a younger individual age 45-49."  [Id.] Plaintiff "has at least a high school education and is able to communicate in English."  [Id.]  The ALJ concluded that she did not have to address whether Plaintiff had transferrable job skills because, based on the Medical-Vocational Rules, Plaintiff was not disabled, regardless of whether or not he had transferrable job skills.  [Id. at 13-14.]  The ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, he "would be able to perform the requirements of representative occupations such as:" office helper, hand packager, and order clerk.  [Id. at 14.]  The ALJ found that these jobs existed in significant numbers in the national economy, even taking into account the partial erosion of the sedentary occupational base because Plaintiff has to be able to alternate between sitting and standing positions.  [Id.]  The ALJ therefore concluded that Plaintiff was "capable of making a successful adjustment to other

6

work that exists in significant numbers in the national economy"
and that he was not disabled for purposes of the SSA.  [Id. at
15.]

Plaintiff requested that the Appeals Council review the
ALJ's Decision.  [AR at 7.]  On March 22, 2016, the Appeals
Council denied his request for review, rendering the ALJ's
Decision the Commissioner's final decision.  [AR at 1-3.]  The
instant Appeal followed.

The sole issue in the Appeal is whether the ALJ erred
because she did not give sufficient weight to the Department of
Veterans Affairs ("VA") decision that Plaintiff is unemployable
because of his service-connected disabilities.  Plaintiff points
to the VA Rating Decision dated November 11, 2013 ("11/11/13 VA
Decision").  [AR at 322-24 (11/11/13 VA Decision); AR at 325-28
(letter to Plaintiff transmitting and explaining effect of the VA
decision).]  The 11/11/13 VA Decision states that Plaintiff
served in the Air Force from June 3, 1992 to August 21, 1992.
[AR at 322.]  It concludes that Plaintiff is entitled to
individual unemployment – *i.e.* his unemployability rating is one
hundred percent – effective May 31, 2013, because he "is unable
to secure or follow a substantially gainful occupation as a
result of service-connected disabilities."  [AR at 323, 326.]
Specifically, the VA assigned the following ratings:

> A 20 percent evaluation is assigned for
> degenerative joint disease, right ankle.  An

evaluation of 20 percent is assigned for marked
limited motion of the ankle.

A 20 percent evaluation is assigned for
degenerative joint disease, left ankle.  An
evaluation of 20 percent is assigned for marked
limited motion of the ankle.

A 10 percent evaluation is assigned for
degenerative joint disease, status post shin
splints with stress reaction distal femurs, right
knee.  An evaluation of 10 percent is granted for
malunion of the tibia and fibula with slight knee
or ankle disability.  A higher evaluation of 20
percent is not warranted in the absence of
moderate knee or ankle disability.

A 10 percent evaluation is assigned for
degenerative joint disease, left foot.  An
evaluation of 10 percent is assigned whenever foot
injury results in moderate symptoms.  A higher
evaluation of 20 percent is not warranted unless
foot injury results in moderately severe symptoms.

A 10 percent evaluation is assigned for
degenerative joint disease, right foot.  An
evaluation of 10 percent is assigned whenever foot
injury results in moderate symptoms.  A higher
evaluation of 20 percent is not warranted unless
foot injury results in moderately severe symptoms.

A 10 percent evaluation is assigned for
degenerative joint disease, status post shin
splints with stress reaction distal femurs, left
knee.  An evaluation of 10 percent is granted for
malunion of the tibia and fibula with slight knee
or ankle disability.  A higher evaluation of 20
percent is not warranted in the absence of
moderate knee or ankle disability.

[AR at 323-24.]  The 11/11/13 VA Decision states that Plaintiff's

"overall or combined rating is 60%.  We do not add the individual

percentages of each condition to determine your combined rating.

We use a combined rating table that considers the effect from the most serious to the least serious conditions." [AR at 326.]

Plaintiff argues that he received a thirty percent disability rating for his right lower extremity and the same for his left lower extremity, and the testimony at the 2014 Hearing before the ALJ addressed his upper and lower extremities. He testified that he "had bilateral shin splints since 1992 that have never gone away . . . [a]nd it's from my, my upper legs, my upper, you know, above my knees all the way to my toes." [AR at 42, 2014 Hrg. Trans. at 9.[5]] He also testified that his treatment for his lower extremities consists of shots for his lower extremities every three months. He gets Synvisc, corticosteroids, Lidocaine, and Prilocaine. [2014 Hrg. Trans. at 18-19.] Ultimately, the ALJ

> considered, and afforded some weigh[t to Plaintiff's] V.A. disability rating. Of significance, the undersigned notes that the V.A. uses a different standard for determining disability. Furthermore, [Plaintiff] was never assessed with a more than 20% rating for degenerative joint disease of the right ankle, the impairment [Plaintiff] alleges significantly impairs his mobility.

[Decision at 12 (citation omitted).]

In support of his request for Appeals Council review, Plaintiff argued that the ALJ applied the wrong standard in

---

[5] The 2014 Hearing Transcript is AR pages 32-63. All subsequent citations to the 2014 Hearing Transcript refer to the page numbers of the transcript itself.

considering his VA rating.  The ALJ should have given the VA

rating "great weight," unless she gave an adequate explanation

why it was not entitled to great weight.  Plaintiff argued that

the ALJ's explanation was not sufficient.

Plaintiff makes the same arguments in the instant

Appeal.  Plaintiff urges this Court to reverse the ALJ's

conclusion that he is not disabled, conclude that he is disabled,

and remand the case for the immediate award of benefits.  In the

alternative, he asks this Court to remand the case for a new

administrative hearing.  Plaintiff also asks for an award of

reasonable attorneys' fees and costs pursuant to 28 U.S.C.

§ 2412(d), as well as any other appropriate relief.

**STANDARD**

A district court has jurisdiction pursuant to
42 U.S.C. § 405(g) to review final decisions of
the Commissioner of Social Security.  A final
decision by the Commissioner denying Social
Security disability benefits will not be disturbed
by the reviewing district court if it is free of
legal error and supported by substantial evidence.
See 42 U.S.C. § 405(g); Ukolov v. Barnhart, 420
F.3d 1002, 1004 (9th Cir. 2005).  "Substantial
evidence means more than a scintilla but less than
a preponderance." Smolen v. Chater, 80 F.3d 1273,
1279 (9th Cir. 1996) (citations omitted).[6]  It
is also "such relevant evidence as a reasonable
mind might accept as adequate to support a
conclusion." Id.  Finally, "[w]here the evidence
may reasonably support more than one

---

[6] Smolen has been superseded on other grounds by 20 C.F.R.
§ 404.1529(c)(3).  See, e.g., Bachli v. Colvin, Case No. EDCV 14-
1480 FFM, 2016 WL 625249, at *2 (C.D. Cal. Feb. 16, 2016).

interpretation, [the court] may not substitute [its] judgment for that of the Commissioner." Verduzco [v. Apfel], 188 F.3d [1087,] 1089 [(9th Cir. 1999)].

. . . .

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). A claimant must satisfy both requirements in order to qualify as "disabled" under the Social Security Act. Tackett, 180 F.3d at 1098.

The Social Security regulations set forth a five-step sequential process for determining whether a claimant is disabled. Ukolov, 420 F.3d at 1003; see 20 C.F.R. § 404.1520. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Ukolov, 420 F.3d at 1003 (citations omitted in original). The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five. Tackett, 180 F.3d at 1098.

The five steps of the disability evaluation process are as follows:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If

11

you do not have a severe medically
determinable physical or mental impairment
that meets the duration requirement in
§ 404.1509, or a combination of impairments
that is severe and meets the duration
requirement, we will find that you are not
disabled.

(iii) At the third step, we also consider the
medical severity of your impairment(s).  If
you have an impairment(s) that meets or
equals one of our listings in appendix 1 of
this subpart and meets the duration
requirement, we will find that you are
disabled.

(iv) At the fourth step, we consider our
assessment of your residual functional
capacity and your past relevant work.  If you
can still do your past relevant work, we will
find that you are not disabled.

(v)  At the fifth and last step, we consider
our assessment of your residual functional
capacity and your age, education, and work
experience to see if you can make an
adjustment to other work.  If you can make an
adjustment to other work, we will find that
you are not disabled.  If you cannot make an
adjustment to other work, we will find that
you are disabled.

20 C.F.R. § 404.1520 (internal citations omitted).

Saragena v. Colvin, CIV. NO. 16-00322 BMK, 2017 WL 548911, at

*1–2 (D. Hawai`i Feb. 10, 2017).

**DISCUSSION**

The VA has rated Plaintiff's unemployability as one

hundred percent and his overall or combined service-connected

disability as sixty percent.  [11/11/13 VA Decision, AR at 323,

326.]  The Ninth Circuit has stated:

12

> The ALJ must "ordinarily give great weight to
> a VA determination of disability."  [McCartey v.
> Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).]
> While a VA disability decision "does not
> necessarily compel the SSA to reach an identical
> result, . . . the ALJ must consider the VA's
> finding in reaching his decision," because of the
> similarities between the VA disability program and
> the Social Security disability program.  Id.
> However, because the two federal programs are not
> identical, "the ALJ may give **less weight** to a VA
> disability rating if he gives persuasive,
> specific, valid reasons for doing so that are
> supported by the record."  Id. (emphasis added).

Hiler v. Astrue, 687 F.3d 1208, 1211 (9th Cir. 2012) (ellipse and

emphasis in Hiler).

In McCartey, the Ninth Circuit held that the ALJ erred

in disregarding the claimant's VA disability rating.  298 F.3d at

1076.  However, in McCartey, the ALJ's decision did not even

mention the VA rating, and the ALJ failed to discuss the

condition that was the primary basis for the VA's rating.  Id. at

1073, 1075.  In contrast, the ALJ in the instant case expressly

addressed the 11/11/13 VA Decision.  The ALJ "considered, and

afforded some weigh[t]" to it, [Decision at 12,] although the ALJ

did not acknowledge the general rule that a VA disability

decision is entitled to "great weight."  After stating that she

accorded the 11/11/13 VA Decision "some" weight, the ALJ noted

that "the V.A. uses a different standard for determining

disability" and that Plaintiff "was never assessed with a more

than 20% rating for degenerative joint disease of the right

ankle, the impairment [Plaintiff] alleges significantly impairs

13

his mobility."  [Id.]  Thus, the ALJ did address the 11/11/13 VA
Decision, accorded it "some" weight, and gave two reasons why the
VA decision was not entitled to more weight.  The instant case is
therefore distinguishable from McCartey.

Nevertheless, the Decision could have been better
crafted, with a more detailed discussion of the ALJ's
responsibility to give "persuasive, specific, valid reasons" –
supported by the record – why she did not give the 11/11/13 VA
Decision "great weight."  In considering Plaintiff's Appeal, this
Court must determine whether the limited analysis in the Decision
is sufficient to constitute "persuasive, specific, valid
reasons."

First, the ALJ was correct that a VA unemployability
rating and a VA disability rating are not equivalent to a
disability determination for purposes of the SSA.  However, that
alone is not a sufficient reason to depart from the general rule
that a VA disability decision is entitled to "great weight."  See
Berry v. Astrue, 622 F.3d 1228, 1236 (9th Cir. 2010) (holding
that the fact the rules governing the SSA and the VA differ "is
not a persuasive, specific, valid reason for discounting the VA
determination" (brackets, internal quotation marks, and citation
omitted)).

Second, the ALJ explained that, in spite of the VA's
ultimate rating of Plaintiff, and in spite of the fact that

14

Plaintiff alleged that it was a significant impairment, the VA

never assigned more than a twenty percent rating to the

degenerative joint disease in Plaintiff's right ankle.  In

addition to this specific example the ALJ cited as a reason for

only according the 11/11/13 VA Decision "some" weight, the ALJ

conducted a thorough review of the medical records that were the

basis of the VA ratings decision.  In particular, the ALJ

discussed numerous instances where the VA records showed that

Plaintiff's medical examinations did not support the severity of

his medical complaints and that his conditions were being

effectively managed.  For example, the ALJ noted the following

from the VA medical records:

-"[B]y late 2011 he was reporting difficulty walking and began to
    use a walking stick.  Nevertheless, muscle strength was
    recorded at 5/5.  He was noted to have plantar fasciitis,
    improved, degenerative joint disease of the ankle, and
    neuralgia.  He was casted with a new custom orthotic."
    [Decision at 10 (citing AR at 766).]

-Tripler Army Medical Center ("Tripler") records stated that
    "October 2011 images of [Plaintiff's] bilateral tibia/fibula
    taken in response to pain complaints showed no acute osseous
    injury.  Bilateral ankle images showed only minimal
    degenerative or post-traumatic changes.  Bilateral hip x-
    rays were also normal; as were images of the knees apart
    from moderate degenerative changes."  [Id. (citing AR at
    783-85, 787-89).]  As to one of the Tripler records, the ALJ
    noted, "[d]espite significant physical complaints, physical
    examination findings were generally normal."  [Id. (citing
    AR at 865).[7]]

---

[7] The record that the ALJ referred to is an August 11, 2011
record from the Tripler Orthopedic Clinic when Plaintiff
"present[ed] with a chronic issue of bilateral hip pain."  [AR at

(continued...)

-Tripler records from early 2012 showed that, "[a]lthough
   [Plaintiff] continued to present for treatment reporting
   significant pain, physical examination findings were
   generally mild and included findings of no acute distress,
   orientation x 4, and ambulation to the treatment room.
   Records from this period indicate the [Plaintiff's]
   condition was good and stable." [Id. at 10-11 (citing AR at
   804, 813).]

-"In January 2013 [Plaintiff] reported a humming and burning
   sensation in his legs bilaterally. He was diagnosed with a
   differential diagnosis of peripheral
   neuropathy/radiculopathy; and a NCS/EMG was ordered. The
   EMG/NCS findings noted normal findings with no evidence of
   peripheral neuropathy." [Id. at 11 (citing AR at 1097-98).]

-"Updated April 2013 bilateral ankle x-rays showed no significant
   joint or bony abnormality and stable findings since
   September 2010. Bilateral foot images were also benign."
   [Id. (citing AR at 1103-06).]

    The ALJ also discussed the disability forms submitted

by Eddie Soliai, M.D., a VA physician. The ALJ ultimately

"afforded only some weight" to Dr. Soliai's "total and permanent

disability form and disability statement." [Id. at 12 (citing AR

at 1290-91, 1448-49).] The ALJ reasoned that:

        [Dr. Soliai] indicates [Plaintiff's] primary basis
        of disability is fibromyalgia; however, the
        records failed to objectively demonstrate a
        diagnosis of fibromyalgia. Fibromyalgia is a
        disorder defined by the American College of
        Rheumatology (ACR) and the Social Security

_____

        [7](...continued)
865.] According to Plaintiff, "his hip felt like it 'exploded',
while running one day in May" and he described the pain since
then as six or seven on a scale of one to ten. [Id.] The
physician assistant recommended physical therapy, but noted that
the etiology of the hip pain was unknown, and "it [did] not
appear that he [had] any significant arthritis in his hip joints,
he [had] slight weakness with adduction; however, most of his
physical exam [was] otherwise normal." [Id.]

Administration recognizes it as medically
determinable if there are signs that are
clinically established by the medical record.  The
signs are primarily the tender points.  The ACR
defines the disorder in patients as "widespread
pain in all four quadrants of the body for a
minimum duration of 3 months and at least 11 of
the 18 specified tender points which cluster
around the neck and shoulder, chest, hip, knee,
and elbow regions."  Other typical symptoms, some
of which can be signs if they have been clinically
documented over time, are irritable bowel
syndrome, chronic headaches, temporomandibular
joint dysfunction, sleep disorder, severe fatigue,
and cognitive dysfunction.

Based on the above-described criteria, the
undersigned finds fibromyalgia is not a medically
determinable impairment in this case because there
are no such signs documented in the medical
record.  Furthermore, [Plaintiff's] significant
activities of daily living, including riding a
bike, swimming, gardening, walking 3000 steps
daily and more, all performed during the period at
issue, illustrate that pain associated with his
medical condition does not render him disabled.

[Id.]

Reading the ALJ's Decision as a whole, this Court
CONCLUDES that – although it is not clearly stated in the ALJ's
discussion of the 11/11/13 VA Decision – the ALJ declined to give
the 11/11/13 VA Decision "great weight" because the VA decision
was not adequately supported by the VA medical records.  This
Court agrees with the ALJ's interpretation of the VA medical
records and this Court concludes that the inferences the ALJ drew
from the VA records were reasonable.  This Court therefore
CONCLUDES that the VA medical records support the ALJ's rejection
of the 11/11/13 VA Decision.

The lack of medical support for the 11/11/13 VA Decision, when considered in light of the differences between VA disability standard and the SSA disability standard, constitutes a "persuasive, specific, valid reason[]," supported by the record, why the 11/11/13 VA Decision is not entitled to "great weight."  This Court therefore CONCLUDES that the ALJ did not err when she afforded only "some" weight to the 11/11/13 VA Decision. Further, this Court CONCLUDES that the ALJ's Decision is supported by substantial evidence and is not based on legal error.[8]  See § 405(g); Ukolov, 420 F.3d at 1004.

## CONCLUSION

On the basis of the foregoing, Plaintiff's appeal of the Administrative Law Judge's October 31, 2014 Decision is HEREBY DENIED, and the Decision is HEREBY AFFIRMED.  There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **May 19, 2017**, unless Plaintiff files a motion for reconsideration of this Order by **May 15, 2017.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 28, 2017.

---

[8] Because Plaintiff has failed to identify any ground that warrants reversal of the ALJ's Decision, it is not necessary to address either Plaintiff's arguments regarding the scope of remand or Plaintiff's request for attorneys' fees and costs.



                                    /s/ Leslie E. Kobayashi
                                    Leslie E. Kobayashi
                                    United States District Judge

**JOHN CHARLES SAWAGUCHI VS. CAROLYN W. COLVIN; CIVIL 16-00255 LEK-KSC; ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S OCTOBER 31, 2014 DECISION**